1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

MARIO LOPES BENITEZ,

    *Petitioner*,

vs.

E.K. MCDANIEL, *et al.*,

    *Respondents*.

3:08-cv-00543-ECR-VPC

FINDINGS OF FACT,
CONCLUSIONS OF LAW,
AND ORDER

    This matter having come on for an evidentiary hearing before the Court on August 24-25, 2011, on the respondents' motion (#26) to dismiss, and the Court having received the testimony, evidence and argument presented on the issues raised, does hereby make the following:

<u>FINDINGS OF FACT</u>

    1.  Petitioner Mario Lopes-Benitez seeks to set aside his December 4, 2001, Nevada judgment of conviction, pursuant to a jury verdict, of sexual assault of a minor under the age of fourteen.

    2.  On direct appeal, the Supreme Court of Nevada affirmed the judgment of conviction on May 15, 2003.  Petitioner did not file a petition for a writ of *certiorari*.  The ninety-day time for seeking *certiorari* review expired on August 13, 2003.

    3.  After 194 days had elapsed, on or about February 24, 2004, petitioner filed a state post-conviction petition.  The petition included considerable Spanish.  The petition did not show a mailing or signature date.  The state district court denied the petition on the merits,

and the Supreme Court of Nevada, ultimately, affirmed on appeal.  The matter initially was reversed and counsel was appointed.  The remittitur issued on May 2, 2007.

4.  After another 517 days had elapsed, on or about October 1, 2008, petitioner mailed his federal petition for filing.

5.  Lopes-Benitez has longstanding mental impairments inhibiting his cognitive functioning resulting from, *inter alia*, multiple substantial head traumas, serious nutritional deficiencies when his brain was developing as a child, and being engaged in child labor at a very young age with no educational stimulus promoting neurological development.

In this regard, the Court finds the testimony of Dr. Antolin Llorente, Ph.D, to be credible and persuasive as to the nature and extent of petitioner's mental impairments and cognitive limitations.  Judy Hebert also testified credibly with regard to her observations of petitioner in her capacity as a prison mental health care provider.  However, her testimony that petitioner did not suffer from Attention Deficit Hyperactivity Disorder (ADHD) and/or panic attacks did not establish that petitioner did not have the mental impairments and functional limitations testified to by Dr. Llorente.  No testimony has been offered that ADHD exhausts the range of conditions that can impair an individual's ability to focus and perform, and no testimony has been offered that panic attacks are the only potentially relevant mood disorder.  While Ms. Hebert's testimony was helpful and worthy of consideration, correctional health care providers did not conduct the comprehensive functional testing and analysis conducted by Dr. Llorente.

6.  Lopes-Benitez' cognitive impairments are compounded by limited education in his native country and the United States.  He reads at only a sixth grade level in Spanish and a third grade level in English, but with only first grade level reading comprehension in English.

7.  With particular regard to the issues in this case, Lopes-Benitez' cognitive impairments limit his executive functioning skills to the extent that he lacks a significant residual functional capacity to adequately comprehend, and comply with, the federal limitation period rules set forth in 28 U.S.C. § 2244(d).

8.  With further particular regard to the issues in this case, Lopes-Benitez' cognitive impairments limit his executive functioning to the extent that he lacks a significant residual

functional capacity to identify and follow through with the series of complicated tasks necessary to prepare and file a federal petition.

9. Lopes-Benitez thus was unable to file a petition without active assistance by another individual able to identify, coordinate, and complete the complicated tasks necessary to prepare and file a federal petition.

10. Lopes-Benitez' mental impairment thus was an extraordinary circumstance beyond his control in that the impairment was so severe that petitioner was unable rationally or factually to personally understand the need to timely file.

11. Lopes-Benitez' mental impairment further was an extraordinary circumstance beyond his control because the impairment was so severe that petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.

12. Petitioner's mental impairment was such that he would not have the functional cognitive capacity to recognize that he could file a federal petition merely by copying the grounds from prior state papers onto a federal petition form and filing same with the federal clerk. Nor would he have had the executive functioning capacity to do so.

13. Lopes-Benitez nonetheless pursued his claims diligently by seeking and utilizing such assistance as was available, but his mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

14. The *active* assistance that petitioner needed to timely prepare and file a federal petition was not available through the prison law library and/or inmate law clerks.

It is undisputed that the prison law library and inmate law clerks did not, and were not required to, provide active assistance to inmates in preparing pleadings. The inmate law clerks only would respond, in a fashion, to specific requests for forms, research materials, and/or translation assistance. The usefulness of the response was dependent, first, upon the specificity of the request made, and second, upon the full responsiveness of the response given by the inmate law clerk in question. Petitioner's cognitive impairments inhibited his ability to formulate sufficiently useful specific requests in the first instance. He in any event

lacked the executive functioning capacity to follow through effectively on his own with the response received to file a federal petition.  Moreover, the responses that he received to his "kites" to the prison law library did not always fully respond to the inquiry or request that he made, whether in English or Spanish.  What petitioner needed to timely prepare and file a federal petition was active assistance in identifying and following through with the tasks necessary to prepare and file the pleading.  Lopes-Benitez did not, and would not, receive such active assistance from the prison law library or inmate law clerks.

15.  Petitioner sought out and utilized such active assistance where he could find it. He was able to file a timely state petition only because he received active assistance from an inmate named Colin.  Unfortunately for Lopes-Benitz, however, Colin no longer was available to him by the time that the remittitur issued following the denial of state post-conviction relief. Petitioner thereafter was able to file the federal petition only after he was able to obtain assistance from George Ramirez on a sustained basis.

16.  Petitioner's requests for assistance otherwise went unanswered.  State post-conviction counsel did not respond to his request for assistance subsequent to the conclusion of the state post-conviction proceedings, and counsel's appointment in any event would not extend to assistance with a federal petition.  Petitioner's requests for help from the prison law library, as discussed above, did not lead to his receiving the active assistance that he needed due to his mental impairment.

17.  Lopes-Benitez had a realistic and well-grounded fear that if he sought less restrictive prison housing – in order potentially to have access to more inmates that only *migh*t assist him – that there was a substantial risk that he would be harassed and/or attacked by other inmates because he had been convicted of a sexual offense against a minor.

Testimony presented by respondents corroborated – rather than contradicted – petitioner's evidence tending to establish that he faced at the very least harassment and at worst a risk of substantial bodily harm in less restrictive housing.  See #61, at 287-90 (Harry Pelzer); see also *id.*, at 242-44 (Deborah Lightsey).  That inmates convicted of sex offenses involving minors are subject to a realistic possibility of harassment and/or physical attack is

a well-established facet of prison life that has been reflected repeatedly in over several decades of cases before this Court.

18.  There further was no guarantee that if Lopes-Benitez subjected himself to a risk of increased harassment and/or physical harm in less restrictive housing that he would have obtained the active assistance that he needed to timely prepare and file a federal petition. Even if petitioner had been held in less restrictive housing that also housed inmate law clerks, the law clerks, as discussed above, were not required to provide the active assistance that petitioner needed due to his cognitive impairments.

19.  Even if petitioner had been housed in a unit with physical access to the prison law library, he would not have been able to effectively utilize that resource to timely prepare and file a federal petition due to his cognitive limitations, even with full Spanish translation of the English texts in the library.  He needed active assistance, not merely physical library access.

<u>CONCLUSIONS OF LAW</u>

1.  The Court has jurisdiction over the subject matter under 28 U.S.C. § 2254(a).

2.  Under 28 U.S.C. § 2244(d)(1)(A), absent further tolling or delayed accrual as discussed *infra*, the one-year time period for filing a federal habeas petition would have expired in this matter on October 22, 2007.

On direct appeal, the Supreme Court of Nevada affirmed the judgment of conviction on May 15, 2003.  Under 28 U.S.C. § 2244(d)(1)(A), the one-year limitation period would begin running after the time expired for seeking *certiorari* in the United States Supreme Court, *i.e.,* on August 13, 2003.  *See, e.g., Summers v. Schriro*, 481 F.3d 710, 717 (9th Cir. 2007). Absent further tolling or delayed accrual, 194 days elapsed before the timely filing of the state post-conviction petition on February 24, 2004.  Under 28 U.S.C. § 2244(d)(2), the timely state post-conviction petition tolled the limitation period from the mailing of the state petition for filing on or about February 24, 2004, through the issuance of the remittitur on May 2, 2007. Absent further tolling or delayed accrual, the federal limitation period would have expired after the remaining 171 days in the limitation expired, on Monday, October 22, 2007, following the otherwise last day of the limitation period on Saturday, October 20, 2007.

3.   Accordingly, absent further tolling or delayed accrual, the federal petition in this matter was untimely.  The federal petition was not mailed for filing until on or about October 1, 2008, nearly a full year after the expiration of the federal one-year limitation period, absent further tolling or delayed accrual.[1]

5.   The correct order of analysis is for the Court is to address any equitable tolling issues prior to addressing any statutory tolling (*i.e.,* delayed accrual) issues under 28 U.S.C. § 2244(d)(1)(B), which provides that "[t]he limitation period shall run from . . . the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the application was prevented from filing by such State action."

Petitioner contends that the Court must address statutory tolling (*i.e.,* delayed accrual) issues under § 2244(d)(1)(B) before it addresses equitable tolling.  However, established Ninth Circuit law distinguishes between statutory tolling under § 2244(d)(2) and statutory tolling (*i.e.,* delayed accrual) under § 2244(d)(1)(B) in this regard.  In a case involving possible statutory tolling under § 2244(d)(2) – based upon the pendency of state post-conviction proceedings -- the district court first must determine whether statutory tolling under § 2244(d)(2) applies before considering equitable tolling.  *See,e.g., Jorss v. Gomez*, 311 F.3d

---

[1] The parties calculate the number of days elapsed in a slightly different manner.  The Court notes, however, that, for example, neither the August 13, 2003, date that the *certiorari* period expired nor the February 24, 2004, date that the state petition was filed count against the running of the limitation period.

The Court additionally notes that petitioner has not argued that the state petition tolls the federal limitation period from the date of mailing rather than the date of filing.  Nor has petitioner presented evidence as to an earlier date of mailing.  There is Ninth Circuit authority supporting the view that the mailing date of the state petition controls for calculating the running of the federal limitation period.  *See Smith v. Duncan*, 297 F.3d 809, 814 (9th Cir. 2002); *Huizar v. Carey*, 273 F.3d 1220, 1223 (9th Cir. 2001); *Saffold v. Newland*, 250 F.3d 1262, 1268-69 (9th Cir. 2000), *vacated on other grounds sub nom*, *Carey v. Saffold*, 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002); *Anthony v. Cambra*, 236 F.3d 568, 575 (9th Cir. 2000).  The Supreme Court of Nevada does not follow the prison mailbox rule for calculating the running of the *state* limitation period, but the issue here is calculation of the *federal* limitation period.  *Cf. Koerner v. Grigas*, 328 F.3d 1039, 1043 n.1 (9th Cir. 2003)(in a context where the federal one-year limitation period was not at issue, the panel noted that Nevada does not recognize the prison mailbox rule for state post-conviction petitions, such that the petition is not filed under Nevada state law until actually received by the state court clerk).  The outcome of the timeliness issue in this case in any event does not turn upon this distinction.

-6-

1189, 1192-93 (9th Cir. 2002).[2]  In contrast, in a case where  statutory tolling (*i.e.,* delayed accrual) is sought under § 2244(d)(1)(B) – based upon an alleged State-created impediment in violation of the Constitution -- the Ninth Circuit requires that the court decide equitable tolling *before* the § 2244(d)(1)(B) issue.  *See,e.g., Lott v. Mueller*, 304 F.3d 918, 925 (9th Cir. 2002).  Because § 2244(d)(1)(B) necessarily involves a constitutional decision, *Lott* requires that the court must resolve any parallel equitable tolling issues first, so as to avoid, if possible, a potentially unnecessary decision on a constitutional issue.  The Court accordingly will address equitable tolling prior to any consideration of delayed accrual under § 2244(d)(1)(B).

6.  Given Findings Nos. 5 through 19, *supra*, and Conclusions Nos. 7 through 14, *infra*, petitioner has established that he is entitled to equitable tolling for the 191 day period prior to the filing of his state petition and for the period from the conclusion of the state proceedings on May 2, 2007, through to the constructive filing of the federal petition on October 1, 2008, due to mental impairments inhibiting petitioner's cognitive functioning.

Equitable tolling is appropriate only if the petitioner can show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, ___ U.S.___, ___, 130 S.Ct. 2549, 1085, 177 L.Ed.2d 130 (2009)(*quoting Pace v. DiGuglielmo,* 544 U.S. 408, 418, 125 S.Ct. 1807, 1814, 161 L.Ed.2d 669 (2005)).  Equitable tolling is "unavailable in most cases," *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir.1999), and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule," *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir.2002)(*quoting United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir.2000)).  The petitioner ultimately has the burden of proof on this "extraordinary exclusion."  292 F.3d at 1065.  He accordingly must demonstrate a causal relationship between the extraordinary circumstance and the lateness of his filing.  *E.g., Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003).  *Accord Bryant v. Attorney General*, 499 F.3d 1056, 1061 (9th Cir. 2007).  Determining whether equitable tolling is warranted is a fact-specific inquiry, and, as a

---

[2]The Court of course did so in Conclusion No. 2 above.

discretionary doctrine that turns on the facts and circumstances of each particular case, equitable tolling does not lend itself to bright-line rules.   *Spitsyn*, 345 F.3d at 799 & 801; *Whalem/Hunt v. Early*, 233 F.3d 1146, 2248 (9th Cir. 2000)(*en banc*).

The Ninth Circuit's decision in *Bills v. Clark*, 628 F.3d 1092 (9th Cir. 2010), states the governing standard vis-à-vis a mental impairment:

> . . . [W]e conclude that eligibility for equitable tolling due to mental impairment requires the petitioner to meet a two-part test:
>
> (1)  *First*, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control . . . by demonstrating the impairment was so severe that either
>
> > (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
> >
> > (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.
>
> (2)  *Second*, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance. . . .

628 F.3d at 1099-1100 (emphasis in original)(footnotes omitted); *see also id.*, at 1100-01.

Ninth Circuit – but not Supreme Court – formulations of the equitable tolling standard, including the formulation in *Bills* specifically regarding mental impairments, refer to the extraordinary circumstance making it "impossible" to meet the filing deadline.  The Ninth Circuit has clarified, however, that "[d]espite the unequivocal "impossibility" language in our standard, we have not insisted that it be literally impossible for a petitioner to file a federal habeas petition on time as a condition of granting equitable tolling." *Harris v. Carter*, 515 F.3d 1051, 1054 n.5 (9th Cir. 2008).  Rather, the court of appeals has "granted equitable tolling in circumstances where it would have technically been possible for a prisoner to file a petition, but a prisoner would have likely been unable to do so." *Id. See also Bills*, 628 F.3d at 1100 n.3 (contrasting language); *Roberts v. Marshall*, 627 F.3d 768, 771 n.5 (9th Cir. 2010), *cert.*

*denied* ___ S.Ct. ___, 80 U.S.L.W. 3188 (Oct. 3, 2011)(also suggesting that there may be no substantive difference in the different language used).

7.   Given Findings Nos. 5 through 11, *supra,* petitioner's mental impairment was an extraordinary circumstance beyond his control because the impairment was so severe that petitioner was unable rationally or factually to personally understand the need to timely file.

8.   Given Findings Nos. 5 through 12, *supra,* petitioner's mental impairment was an extraordinary circumstance beyond his control because it was so severe that his mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.[3]

In this regard, respondents urge that petitioner was capable of timely filing a federal petition at any time prior to the otherwise expiration of the federal limitation period on October 22, 2007, merely by copying the grounds from prior state papers onto a federal petition form and filing same with the federal clerk.  What is so clear and easy to trained and unimpaired counsel, however, neither was readily apparent to petitioner with his impaired cognitive function nor was realistically within his capacity with that impaired function.

9.   Given Findings Nos. 13 through 19, *supra*, and Conclusions Nos. 10 through 12, *infra*, petitioner pursued his claims diligently – by seeking and utilizing such assistance as was available – but his mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

In this regard, petitioner utilized the assistance of the inmate Colin in preparing and filing a state petition that was timely.  He further utilized the assistance of inmate George Ramirez in ultimately preparing and filing the federal petition.  He made other requests for assistance, but he received no assistance of substance – vis-à-vis the active assistance that he needed to prepare and file a federal petition – in response.  His request for assistance from his appointed state post-conviction counsel went unanswered, and the appointment in all events did not extend to assisting petitioner with filing a federal petition.

_____

[3] Petitioner need show only either that he was unable rationally or factually to personally understand the need to timely file or that he was unable personally to prepare a habeas petition and effectuate its filing. He has demonstrated both in this case.

The prison law library and inmate law clerks did not, and would not, provide the active assistance that petitioner needed to file a timely federal habeas petition.  For the bulk of his incarceration, petitioner could not meet directly with the inmate law clerks due to his housing classification.  Even if he could have met with a law clerk on a sustained basis, inmate law clerks are under no obligation to assist inmates in preparing pleadings. The role of the inmate law clerks is to respond to particular inquiries, typically by forwarding copies of materials believed to be responsive to an inquiry.  For inmates such as petitioner in segregated or locked down units, the inmate law clerks respond only to written requests on "kites" forwarded through the prison internal mail system.  Petitioner's ability to formulate useful requests via this method was limited by his cognitive impairments, and the answers that he received back to even specific requests were not always responsive or helpful.

10.  As a matter of law, petitioner was not required to seek a less restrictive housing classification where he could have direct access to the law library and/or inmate law clerks, particularly given Findings Nos. 17 through 19, *supra*.

An inmate is not required to seek assistance at any cost or at any risk:

> The availability of assistance is an important element to a court's diligence analysis. . . . .  But the availability of jailhouse assistance could also cut the other way.  If legal help is available only because a prisoner has to resort to bribery or succumb to extortion, and a prisoner does not do so, a court would not find a lack of diligence.

*Bills*, 628 F.3d at 1101.

If an inmate is not required to subject himself to extortion to obtain assistance, then, quite obviously, an inmate is not required to subject himself to the risk of harassment, substantial bodily injury, and/or possibly even death in order to obtain assistance.  Lopes-Benitez was in administrative segregation because there was a substantial risk that he would be harassed and/or attacked by other inmates because he was convicted of a sexual offense involving a minor.  It is beyond any reasonable dispute that he was not required to subject himself to such a risk by seeking a housing classification that only *might* provide him more meaningful access to an inmate law clerk or other legal resources.

-10-

The Court emphasizes that such a move only *might* provide petitioner more meaningful access because, in the final analysis, an inmate law clerk was not required to provide petitioner with anything more than a response to a specific inquiry.  Lopes-Benitez quite clearly required more than such passive assistance.  He lacked the cognitive functional capacity to himself timely prepare and file a federal petition with someone only answering his own – likely inartful at best – inquiries and/or giving him access to a law library, particularly one with only English texts on legal topics.

That is, it is speculative at best that Lopes-Benitez actually would have obtained the active assistance that he actually needed if he had put his safety at substantial risk by seeking less-restrictive housing.  Under *Bills*, he clearly was not required to do so in all events.

11.  Petitioner's failure to himself follow through with certain tasks – such as the tasks outlined for him when George Ramirez was transferred indefinitely to a different facility for medical care – does not demonstrate a lack of diligence but instead demonstrates the level of his cognitive functional impairment, particularly in executive functioning.  The appropriate measure of diligence in this context under *Bills* is that petitioner sought out and utilized active assistance when he could find it.  When Lopes-Benitez could not find *active* assistance – as opposed to the merely passive single-response assistance available to an extent through the prison law library through kites – he lacked the capacity to independently initiate and complete the complex series of tasks necessary to timely prepare and file a federal petition.  He otherwise sought active assistance from multiple sources over the course of the relevant time periods and utilized the assistance that was available when it was available.

12.  In sum, petitioner did "diligently seek assistance and exploit[ed] whatever assistance [was] reasonably available" in satisfaction of the *Bills* diligence standard.

13.  Petitioner accordingly has demonstrated that he is entitled to equitable tolling for the 191 day period prior to the filing of his state petition and for the period from the conclusion of the state proceedings on May 2, 2007, through to the constructive filing of the federal petition on October 1, 2008, due to mental impairments inhibiting petitioner's cognitive functioning.

The Court is not persuaded by respondents' remaining subsidiary arguments regarding equitable tolling.  For example, petitioner's timely requests for medication refills and timely filing of requests to reverse medical charges demonstrate neither an understanding of the more complex timely filing requirements of AEDPA nor a capability to prepare and timely file a federal habeas petition.  Nor does the fact that petitioner made no request to prison medical staff for help with his federal habeas petition have controlling significance.  Even if the Court were to assume, *arguendo*, that an inmate would have to show that he requested help from *medical* staff regarding a *legal* matter in order to show diligence, respondents do not elucidate what medical staff would have done other than to refer petitioner to the law library.  It has been established that the law library would not provide the active assistance that petitioner needed to timely file a federal petition.  Making a request for legal help to medical staff thus would not have led to any different outcome.

14. The Court accordingly has no occasion to consider whether the other factors relied upon by petitioner to establish tolling otherwise gave rise to a basis for equitable tolling singly or in combination, other than the extent to which these additional factors may have made compliance with the federal timeliness requirement even more difficult for petitioner with his mental impairment.  The Court accordingly does not place any – independent – reliance in finding that petitioner is entitled to equitable tolling upon the limitations placed on petitioner's access to prison legal resources, his limited English language skills, and/or any alleged "ineffectiveness" of appellate and/or state post-conviction counsel in allegedly not advising petitioner of the one-year limitation period for filing a timely federal habeas petition.  Even if petitioner had been given unlimited physical access to a complete law library with all needed materials translated into Spanish and had been advised by counsel of the federal one-year limitation period, he likely still would have been unable to prepare and timely file a federal habeas petition due to his cognitive impairments.  What petitioner needed to overcome the limitations of his mental impairment was active assistance, and he succeeded in filing state and federal papers only when he had such active assistance.

/ / / /

15.   The Court thus further has no occasion to reach the constitutional issues presented by petitioner's reliance upon § 2244(d)(1)(B) for statutory tolling for the relevant periods prior to the constructive filing date of the federal petition.  *Cf. Lott, supra.*

16.   Given Conclusions Nos. 17 through 20 *infra*, petitioner has not established a legally viable basis for either statutory or equitable tolling following the constructive filing of the original federal petition itself on or about October 1, 2008, up through the appointment of federal habeas counsel on April 1, 2009.

17.   The claim-discovery statutory tolling (or delayed accrual) rule in 28 U.S.C. § 2244(d)(1)(D) does not provide a basis for such post-filing tolling or delayed accrual in the present case.

Under § 2244(d)(1)(D), "[t]he limitation period shall run from . . . the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of reasonable diligence."  In the post-hearing briefing, petitioner urges that he did not discover the factual predicate for a "claim" – referring to his factual argument in support of statutory and equitable tolling of the federal limitation period based upon an alleged constitutional impediment to his access to the courts – until testimony by respondents' witnesses during the August 25, 2011, federal evidentiary hearing.  He further urges that he did not discover the factual predicate for a "claim" – referring to his factual argument is support of equitable tolling of the federal limitation period based upon his mental impairment – until after counsel was appointed on April 1, 2009.[4]

The Court is not persuaded.  Section 2244(d)(1)(D) quite clearly is referring to a substantive claim presented in a petition, not a factual or legal "claim" – *i.e.*, a contention – made by a petitioner in the course of arguing the federal limitation issue.  Petitioner's attempt

---

[4]Counsel for both sides perhaps misunderstood the Court's request regarding supplemental briefing.  The Court was not seeking briefing on the application of § 2244(d)(1)(D).  The Court referred to this provision because it was the only legal principle which clearly provided for tolling (or in truth delayed accrual) after the filing of the federal petition, *i.e.*, on a "per-claim" basis.  The Court was seeking argument directed to the legal question of whether comparable "per-claim" tolling otherwise was available on any other basis after the federal petition itself was filed.  Absent specific argument that an actual substantive claim *in the amended petition* could not have been discovered previously, § 2244(d)(1)(D) otherwise has no pertinence to this case.

to bootstrap a tolling argument or contention into a "claim" that then establishes the timeliness of substantive claims in an amended petition is at best circular, makes no logical sense under the statute, and is unpersuasive.  Section 2244(d)(1)(D) clearly is referring to the discovery of the facts supporting a substantive claim presented in a pleading, not a tolling argument.

18.   The rule in 28 U.S.C. § 2244(d)(1)(B) does not provide a basis for tolling or delayed accrual in this case after the filing of the original federal petition in this matter.

As previously noted, under 28 U.S.C. § 2244(d)(1)(B), "[t]he limitation period shall run from . . . the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the application was prevented from filing by such State action."  Even if the Court were to assume, *arguendo*, that a State-created constitutional impediment prevented the filing of the petition (the "application" in the terms of the statute) prior to October 1, 2008, it would stand the statute on its head to construe it to delay the running of the limitation period based upon an impediment to the filing of a petition after one actually had been filed.  While petitioner seeks to place a gloss on the statute of allegedly being prevented from filing a "meaningful" petition, that is neither what the statute states nor implies.  It instead refers to an "impediment to *filing* an application."

Moreover, while petitioner needed active assistance to file a federal petition, which he ultimately received, he cites no apposite authority holding that a petitioner is entitled to tolling or delayed accrual after the filing of the federal petition unless and until he is afforded access to assistance and resources equivalent to that provided by federal habeas counsel.[5]

---

[5] *Cf. Lewis v. Casey*, 518 U.S. 341, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996):

It must be acknowledged that several statements in *Bounds* went beyond the right of access recognized in the earlier cases on which it relied, which was a right to bring to court a grievance that the inmate wished to present, *see, e.g., Ex parte Hull*, 312 U.S., at 547–548, 61 S.Ct., at 640–641; *Griffin v. Illinois*, 351 U.S., at 13–16, 76 S.Ct., at 588–589; *Johnson v. Avery*, 393 U.S., at 489, 89 S.Ct., at 750–751.  These statements appear to suggest that the State must enable the prisoner to *discover* grievances, and to *litigate effectively* once in court.  *See Bounds*, 430 U.S., at 825–826, and n. 14, 97 S.Ct., at 1497, and n. 14.  These elaborations upon the right of

(continued...)

-14-

1  Petitioner quite clearly was not prevented from filing an application or petition on or after
2  October 1, 2008, as he did in fact file the petition in this matter.

3    The statute provides no basis for "per-claim" tolling after the filing of the application or
4  petition outside of the claim-discovery rule in § 2244(d)(1)(D).

5    19. Petitioner otherwise has not provided apposite legal authority or argument tending
6  to establish that other tolling or delayed accrual is available on a per-claim basis after the
7  federal petition is filed on any other basis other than § 2244(d)(1)(D).  Petitioner has carried
8  forward argument regarding his claims of tolling for the period prior to the filing of the federal
9  petition.  Petitioner, however, has not articulated any apposite legal argument tending to
10  establish that such tolling potentially is available under the governing law after the federal
11  petition actually has been filed.

12    20. On the showing and argument made, the Court accordingly holds that no basis for
13  tolling or delayed accrual exists in this case after the constructive filing of the federal petition
14  on October 1, 2008.  The timeliness of claims in the amended petition thus is governed by
15  relation-back principles.

16    21. Turning to the relation back issues, given Conclusions Nos. 22 through 35, *infra*,
17  the Court holds that Grounds 1, 3(B), 3(C)(2), 3(E), 4(A), 5 and 6 of the first amended petition
18  (#17) do not relate back to the filing of the original petition (#6) and therefore are untimely.

19
20     [5](...continued)
21      access to the courts have no antecedent in our pre- *Bounds* cases, and we
    now disclaim them.  To demand the conferral of such sophisticated legal
22      capabilities upon a mostly uneducated and indeed largely illiterate prison
    population is effectively to demand permanent provision of counsel, which
23      we do not believe the Constitution requires.

24  518 U.S. at 354, 116 S.Ct. at 2181 (emphasis in original).

25    This Court continues to have serious reservations about the constitutional adequacy of the paging
system used to provide legal resources in many Nevada state prisons for accessing the courts, as the
26  undersigned expressed in *Koerschner v. Warden*, 508 F.Supp.2d 849 (D. Nev. 2007).  However, the above
passage from *Lewis v. Casey* would strongly suggest that the capability later demonstrated by competent
27  federal habeas counsel in asserting claims in a counseled amended petition is not necessarily the measure of
the capability that must be provided by the State to inmate litigants in order to file a petition deemed to be
28  "meaningful."

1      The counseled first amended petition was filed on December 10, 2009, more than a

2  year after the end of the period of equitable tolling found herein and the constructive filing

3  date of the federal petition on or about October 1, 2008.  A claim in the first amended petition

4  accordingly will be timely only if the claim relates back to a claim in the timely-filed original

5  petition.

6      Any new claim in an amended petition that is filed after the expiration of the one-year

7  limitation period will be timely only if the new claim relates back to the filing of the original

8  federal petition under Rule 15(c)(2) of the Federal Rules of Civil Procedure, on the basis that

9  the claim arises out of "the same conduct, transaction or occurrence" as a claim in the original

10  petition.  *Mayle v. Felix*, 545 U.S. 644, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005).  In *Mayle*,

11  the Supreme Court held that habeas claims in an amended petition do not arise out of "the

12  same conduct, transaction or occurrence" as claims in the original petition merely because

13  the claims all challenge the same trial, conviction or sentence.  545 U.S. at 655-64, 125 S.Ct.

14  at 2570-75.  Rather, under the construction of the rule approved in *Mayle*, Rule 15(c)(2)

15  permits relation back of habeas claims asserted in an amended petition "only when the claims

16  added by amendment arise from the same core facts as the timely filed claims, and not when

17  the new claims depend upon events separate in 'both time and type' from the originally raised

18  episodes."  545 U.S. at 657, 125 S.Ct. at 2571.

19      22.  The Court is not persuaded by petitioner's general argument as to each claim that

20  "relation back" of a claim in the amended federal petition to the original federal petition is

21  established on the basis that the claim in the amended federal petition allegedly was

22  exhausted in the state courts.  Petitioner urges that this alleged exhaustion of the claims

23  "gave notice" of the respective claim to respondents.  The exhaustion of a claim has nothing

24  to do with whether a claim in an amended petition relates back to a claim in a preceding

25  federal petition.  Petitioner must satisfy the relation-back standard set forth by the Supreme

26  Court in *Mayle*, not demonstrate exhaustion.

27      23.  The Court further is not persuaded by petitioner's general argument that all six

28  claims in the first amended petition relate back to the original petition and are timely because

-16-

petitioner filed exhibits consisting of copies of state court record materials in response to this Court's order that he do so. The Court directed that petitioner file the materials because petitioner did not attach the state court written decisions regarding his conviction as required by the petition form and because the Court also needed additional materials to complete initial review. The mere filing of state court record materials in response to a court order does not constitute the assertion of claims. The amended petition claims must relate back to claims actually specifically alleged in the original petition, not to a stack of record exhibits.

24. Ground 1 of the first amended petition does not relate back to a timely claim.

In amended Ground 1, petitioner alleges that he was denied rights to a fair trial and confrontation under the Sixth and Fourteenth Amendments when the testimony of the victim was admitted as a demonstrative exhibit seeking to demonstrate that the victim was unable to communicate sufficiently to give consent to sexual activity with petitioner.

Petitioner contends that Ground 1 of the amended petition relates back to Ground 2 of the original petition.

In original Ground 2, petitioner alleged that he was denied rights to due process and a fair trial when the prosecution knowingly used false evidence. Petitioner alleged in particular: (a) that the victim's family testified that an incident occurred in the back of petitioner's van when the van actually had been full of construction tools; and (b) that the victim's family testified that the victim's stomach hurt, that she was walking slowly and that she yelled when the victim instead actually was laughing and running to her mother.

Amended Ground 1 does not arise from the same core facts as original Ground 2. Amended Ground 1 arises from an alleged trial error in allowing the victim herself to testify as a demonstrative exhibit. Original Ground 2 instead arises from the prosecution's alleged knowing use of perjured testimony by the victim's family as to what they observed after the alleged incident. The amended claim depends on events separate in both time and type from the originally alleged episodes.

Amended Ground 1 therefore does not relate back to the original petition and is untimely.

25.  Ground 2 of the first amended petition relates back to the original petition and is timely.

In Ground 2 of the first amended petition, petitioner alleges that he was denied rights to a fair trial and due process under the Fifth, Sixth, and Fourteenth Amendments due to prosecutorial misconduct because of arguments made during the State's closing argument. Petitioner refers to passages in the closing where the prosecutor, *inter alia*, challenged petitioner's account that the victim willingly undressed and lay back while he masturbated from four feet away and that the victim's physical injury found during examination resulted from her own masturbation.   In challenging petitioner's account, the prosecutor stated that petitioner's story required that the jury believe that the victim was "this thirteen-year-old mentally retarded, deaf mute temptress," and he referred to petitioner's "magical" "flying-semen" story seeking to explain the presence of his semen.

In Ground 3 of the original petition, petitioner alleged that he was denied effective assistance of trial counsel when counsel failed to object to improper closing argument when the prosecutor, *inter alia*, referred to his semen magically flying from four feet away when petitioner allegedly in fact said that he had taken a few steps forward before his semen fell on the victim's vagina.

Amended Ground 2 arises from the same core facts as original Ground 3.  It is not necessary for the amended ground to present the same legal theory as the original ground, so long as it is based on the same core facts.  Critically, in *Mayle*, the Supreme Court looked to "the existence of a common 'core of operative facts' uniting the original and newly asserted claims," *i.e.*, whether the amendment added "a new legal theory tied to the same operative facts as those initially alleged."  545 U.S. at 659 & n.5, 125 S.Ct. at 2572 & n.5.  Given that the claims in the original and amended petitions are united by the same common core of operative facts, *i.e.*, the State's closing argument, the Court holds that the claims in Ground 2 of the amended petition relate back to the original petition. *See also Valdovinos v. McGrath*, 598 F.3d 568, 575-76 (9th Cir. 2010), *vacated on other grounds*, ___ U.S. ___, 131 S.Ct. 1042, 178 L.Ed.2d 860 (2011)(*Brady* claim based upon failure to disclose additional evidence

-18-

related back to timely *Brady* claim based upon failure to disclose other pieces of evidence, and ineffective assistance claim based upon failure to investigate and discover additional exculpatory evidence related back to timely ineffective assistance claim based upon counsel's failure to investigate and discover other exculpatory evidence).[6]

Amended Ground 2 therefore relates back to the original petition and is timely.

26.  Ground 3(A) of the first amended petition relates back to the original petition and is timely.

In Ground 3 of the first amended petition, petitioner raises multiple claims of ineffective assistance of trial counsel.  Amended Ground 3(A) is presented under a heading alleging that trial counsel failed to conduct adequate pretrial investigation.  However, amended Ground 3(A) in fact alleges a number of failures by trial counsel, including failures to investigate, a failure to retain expert testimony, failure to object to certain testimony, failure to argue certain points, and failure to conduct certain cross-examination.  Yet the claims are tied, to one another and to the original petition, by allegations in original Grounds 1, 2 and 3.  In these grounds, collectively, petitioner not only alleged that trial counsel failed to investigate and prepare a defense presenting his side of the case but also asserted his version of the events in contrast to the State's presentation that trial counsel allegedly did not develop and pursue. *See also Valdovinos*, *supra*.

Amended Ground 3(A) therefore relates back to the original petition and is timely.

27.  Ground 3(B) of the first amended petition does not relate back to the original petition and is untimely.

In amended Ground 3(B), petitioner alleges that trial counsel failed to request an evaluation of the victim to determine her capacity to comprehend and to consent to sexual

---

[6]Clearly, the fact that the claims in the original and amended petitions present different legal theories is not controlling.  *E.g., Mayle*, 545 U.S. at 664 n.7, 125 S.Ct. at 2574 n.7 (referring to statement in the Moore treatise that "relation back ordinarily [is] allowed 'when the new claim is based on the same facts as the original pleading and only changes the legal theory.'"); *see also* 545 U.S. at 659 n.5, 125 S.Ct. at 2572 n.5 ("The amendment in question added . . . a new legal theory tied to the same operative facts as those initially alleged.').

activity.  While petitioner presented claims in the original petition concerning his version of the events, there are no allegations in the original petition concerning the victim's capacity to consent.  Amended Ground 3(B) does not arise from the same core facts as a claim in the original petition.

Amended Ground 3 (B) therefore does not relate back to the original petition and is untimely.

28.  Ground 3(C) of the first amended petition relates back to the original petition only in part.

In Ground 3(C), petitioner alleges that trial counsel failed to present an adequate defense at trial by (1) failing to present witnesses or evidence supporting a claim of consensual sexual conduct; and (2) failing to object when the State failed to present legally admissible or relevant evidence regarding the victim's capacity to consent.  Ground 3(C)(1) arises from substantially the same core facts as original Grounds 2 and 3.  Amended Ground 3(C)(2), however, as with amended Ground 3(B), does not arise from the same core facts as any claim in the original petition.

Accordingly, amended Ground 3(C)(1) relates back to the original petition and is timely, but Ground 3(C)(2) does not related back and is not timely.

29.  Amended Ground 3(D) relates back to the original petition and is timely, to the extent that the amended claim pertains to alleged prosecutorial misconduct in closing argument.

In amended Ground 3(D), petitioner alleges that trial counsel failed to object to prosecutorial misconduct, incorporating amended Ground 2.  Similar to the discussion of amended Ground 2, amended Ground 3(D) relates back to original Ground 3, which alleged that counsel failed to object to improper closing argument by the State.  Amended Ground 3(D) relates back, however, only to the extent that petitioner alleges that trial counsel failed to object to alleged prosecutorial misconduct in closing argument.  The conclusory allegations in amended Ground 3(D) referring to a failure to object to unspecified prosecutorial misconduct prior to the closing arguments do not relate back.

1   Amended Ground 3(D) thus relates back to the original petition and is timely only to

2   the extent that the claim alleges that trial counsel was ineffective for failing to object to alleged

3   prosecutorial misconduct in closing argument.

4   30.  Amended Ground 3(E) does not relate back to the original petition and is untimely.

5   In amended Ground 3(E), petitioner alleges that trial counsel failed to object to

6   testimony by Kathryn Black, a sign language interpreter, as inappropriate rebuttal evidence.

7   According to the claim, the State mischaracterized Lopes-Benitez' testimony as asserting that

8   he was able to communicate with the victim through rudimentary signs and auditory signals.

9   Petitioner maintains that the State's use of Black's testimony was inappropriate rebuttal.

10  There was no claim in the original petition presenting actual allegations regarding the rebuttal

11  testimony offered by the State.  The mere fact that petitioner broadly claimed that the victim

12  consented to the sexual activity does not establish that amended Ground 3(E) arose from the

13  same core facts as a claim in the original petition.

14  Amended Ground 3(E) therefore does not relate back to the original petition and is

15  untimely.

16  31.  Amended Ground 3(F) relates back to the original petition and is timely.

17  In amended Ground 3(F), petitioner alleges that trial counsel failed to respond to his

18  request for new counsel.  Petitioner presented corresponding factual allegations in original

19  Ground 1. See #6, at electronic docketing page 4.  Amended Ground 3(F) accordingly relates

20  back to the original petition and is timely.

21  32.  Amended Ground 4(A) does not relate back to the original petition and is untimely.

22  In Amended Ground 4, petitioner raises multiple claims of ineffective assistance of

23  appellate counsel.  Amended Ground 4(A) alleges that appellate counsel failed to raise or

24  adequately brief a claim challenging the sufficiency of the evidence.  In original Ground 5,

25  petitioner alleged that appellate counsel failed to raise appellate claims contending that the

26  prosecution knowingly used false evidence and that the state trial court erred in failing to give

27  an instruction on lesser included offenses.  Petitioner did not allege that appellate counsel

28  failed to challenge the sufficiency of the evidence.  Further, while petitioner included claims

in the original petition based upon his version of the events, he included no claim challenging the sufficiency of the evidence.  A holding that amended Ground 4(A) related back to the original petition would be tantamount to a holding that the allegation of any claim of ineffective assistance of appellate counsel in an original petition provides a basis for relation back of any other claim of ineffective assistance of appellate counsel in later pleadings. The relation-back standard under *Mayle v. Felix* is not that accommodating.

Amended Ground 4(A) therefore does not relate back to the original petition and is untimely.

33.  Amended Grounds 4(B) and 4(C) relate back to the original petition and are timely to the extent that the claims allege that appellate counsel was ineffective for failing to raise or adequately raise a claim on appeal regarding alleged prosecutorial misconduct in closing argument.

Amended Ground 4(B) alleges that appellate counsel failed to raise or adequately brief the prosecutorial misconduct claims referenced in amended Grounds 2 and 3(D).  Amended Ground 4(C) alleges that appellate counsel failed to federalize the claim that was raised in this regard on direct appeal.  For substantially the reasons discussed above as to Grounds 2 and 3(D), the Court holds that Grounds 4(B) and 4(C) similarly relate back as based on the same core facts alleged as to Grounds 2 and 3(D) regarding alleged prosecutorial misconduct in closing argument.

Amended Grounds 4(B) and 4(C) therefore relate back and are timely to the extent that the claims allege that appellate counsel was ineffective for failing to raise or adequately raise a claim on appeal regarding alleged prosecutorial misconduct in closing argument.

34.  Amended Ground 5 does not relate back to the original petition and is untimely.

In amended Ground 5, petitioner challenges the sufficiency of the evidence.  While petitioner included claims in the original petition based upon his version of the events, he included no claim challenging the sufficiency of the evidence.

Amended Ground 5 therefore does not relate back and is untimely.

35.  Amended Ground 6 does not related back to the original petition and is untimely.

1        Amended Ground 6 alleges that the state trial court deprived petitioner of rights to a

2  fair trial, due process and confrontation when the court rejected a requested defense

3  instruction stating that a child victim of a sexual assault must testify with particularity regarding

4  the assault.  The only claim of jury instruction error raised in the original petition was one

5  alleging error in failing to give a lesser included offense instruction, an entirely distinct issue

6  pertaining to different facts.  Amended Ground 6 does not arise from the same core facts as

7  any claim in the original petition.

8        Amended Ground 6 therefore does not relate back and is untimely.

9        If any Finding of Fact is considered to be a Conclusion of Law, or any Conclusion of

10  Law is considered to be a Finding of Fact, it is the Court's intention that it be so considered.

11  ORDER

12        IT THEREFORE IS ORDERED that respondents' motion (#28) to dismiss is GRANTED

13  IN PART and DENIED IN PART in accordance with the remaining provisions of this order.

14        IT FURTHER IS ORDERED that Grounds 1, 3(B), 3(C)(2), 3(E), 4(A), 5 and 6 of the

15  first amended petition are DISMISSED with prejudice as untimely.  Amended Grounds 3(D),

16  4(B) and 4(C) further are timely only to the extent that the amended petition alleges that trial

17  and appellate counsel were ineffective for failing object to or raise claims regarding alleged

18  prosecutorial misconduct in closing argument.

19        IT FURTHER IS ORDERED that respondents shall file a response to the remaining

20  claims within thirty (30) days of entry of this order.  The Court modifies the prior scheduling

21  order such that respondents shall assert any remaining procedural defenses in an answer

22  together with their response on the merits.  Petitioner shall have thirty (30) days from the filing

23  of the answer to file a reply.

24        **No extensions of time will be granted absent extraordinary circumstances.**

25        DATED:   November 15, 2011.

26

27

28                               _Edward C. Reed._
                                    EDWARD C. REED
                                    United States District Judge